The opinion of the court was delivered by
Whitehead, J.
In the first place it becomes necessary to inquire, whether, under the facts in this case, the defendant at the time of the issuing of this attachment, was residing out of this state, within the meaning of the 21st section of the attachment act, Elm. Dig. 24, which enacts that debtors who reside out of the state shall be liable to be attached, &o.
It is apparent from the testimony, that the defendant went to Mexico as the agent of the company ; of which the plaintiff was a large stockholder and an acting director. He left his family with the declared intention of returning as soon as the business of his agency would permit. It is manifest from the minutes of the proceedings of the board of directors, and from the agreements executed by the company with the machinists, who went out in the employ of the company, to work under the direction of the defendant, that it was supposed by the plaintiff and the other directors that lie would remain in Mexico at least two years after he had there entered upon the duties of his agency. His expectations before he left his family were, that he would be absent a little more than two years. It is probable from the date of the resolution of the board constituting him its agent, and the dates *332 of the articles of agreement with the machinists who went out to work under the defendant’s direction that he sailed in July or August 1841. The writ in this case was issued in December 1843, two years and four or five months after he left his family. Some time must necessarily have been occupied in his passage to Mexico; and the nature of his agency was such, as may have demanded of him a longer stay in the country, than he at first anticipated. Under these circumstances the fact of his not returning immediately after the expiration of the two years, should not of itself be regarded as evidence of his intention to make that country his permanent residence. Judge Story, in his Conflict of Laws, page 46, says, the place where a married man’s family resides is generally to be deemed his domicil. And again on the same page, if a married man has his family fixed in one place and he does his business in another, the former is considered the place of his domicil. Had the defendant returned to his family in the month of December 1843, when this writ was issued, he would have been entitled to exercise all the privileges of a resident citizen of the county of Passaic. His absence under the circumstances had not worked a change of residence or domicil.
It may be difficult to define the meaning of the term resident in our attachment act. The legislature certainly did not use the word in the same sense in the 26th section prescribing proceedings against non-resident debtors, that they did in the first section of the act, in reference to absconding debtors. By the first section it is enacted “ that if any creditor shall make oath &c., that his debtor absconds from his creditors, and is not, to his knowledge or belief, resident in this state at the time, then,” &c. Here it evidently means an actual residence or inhabitancy, or in other words, thas he is not actually present in the state. In the 26th section the word is used in a different sense. It me’ans more than mere inhabitancy or commorancy ; for if we give to it this restricted meaning, then any of our citizens who may leave the state on a tour of pleasure or business, with the intention of returning in a few days or weeks, might subject his property to seizure under this proceeding. This was not the intention of the legislature, nor has it ever been so considered. The legislature must have* contemplated in this section, the case of a person *333 having not only a legal residence or domicil out of the state, but upon whom the ordinary process of the court could not be served. If the ordinary process of the court could be served upon the debtor, by his being actually within its reach in the state, then notwithstanding his legal residence or domicil may have been in another state, he is not liable to this extraordinary proceeding, City Bank v. Merrit, 1 Green 131. Although the Supreme Court of New York in Thompson’s ease, 1 Wendell R. 43, make a distinction between domicil and residence, yet they say, “the act is intended to give a remedy to creditors whose debtors cannot be served with process.”
In this case the defendant’s family were residing upon his farm in the county of Passaic. He left with the knowledge and consent of the plaintiff, and, in a sense, as his agent; with the declared intention to his family and friends of returning in about two years. He has corresponded with the company. Has kept up communications with his family, and remitted to them moneys for their support and the payment of his debts. Under these circumstances I do not see how a doubt could be entertained that his legal residence was in the county of Passaic, and that the ordinary process of summons could have been served upon him, by leaving a copy with his family, at' their residence or place of abode. If so, then according to the principles heretofore settled in this court these proceedings cannot be sustained.
But it is said that his agency for the company ceased long before the expiration of the two years. That in January 1843, it was determined by his own act in filing a bill in Chancery to put the company into bankruptcy. That he has never been recognised as agent by the receiver, and that his continued absence should be regarded as a circumstance sufficient to control the presumption arising from the residence of his family and to show an intention to make Mexico his legal residence.
I find enough in the minutes of the proceedings of this company, and in the testimony of D. K. Allen and W. Shippey to justify, if not to demand, that the defendant in looking after and seeking to protect his own interests, should have remained in Mexico up to the time of issuing this attachment. The proceedings of the company, in declaring the dividend of $24,000 in the *334 absence of the defendant and without notice to him, and at a time when by their minutes it appears, that shortly before, they were in embarrassed circumstances and had authorised their president to confess judgments to creditors, the lease of the premises and sale of all their movable and personal estate to D. K. Allen and Shippey upon the terms they did, the large amount of machinery manufactured by the company for the plaintiff, and by him shipped to Mexico in his own name, were calculated to excite the fears of the defendant that injustice had been done him by the plaintiff and the other directors in his absence, and might justify him in contesting in the courts of Mexico the plaintiff’s right to the machinery or to the moneys arising from the sale of it. That legal proceedings were instituted, against the defendant in Mexico by the plaintiff, is proved by his counsel; and the defendant’s son testifies that his father is detained there by two lawsuits. Now although we-have no legal evidence before us as to the subject matter of these suits, yet we have this fact proven, that this plaintiff is prosecuting one, and the individual to whom he sold or consigned the machinery in Mexico is a party to the other. It appears to me, in view of the circumstances under which the defendant went to Mexico as the agent of this company, and in some respects as the agent of this plaintiff, the active part the plaintiff afterwards took in the affairs of the company, the disposition of the machinery manufactured by the company ; in Connexion with the institution of legal proceedings by the plaintiff against the defendant in the Mexican courts, we should be doing a grievous wrong, to sustain their proceedings.
It is not necessary, however, for us to express an opinion upon the fairness and propriety of the conduct of this plaintiff and the other directors of the company, towards the defendant in his absence. I have adverted to these matters, as furnishing sufficient reasons for the- defendant’s remaining in Mexico longer than he originally intended. In my opinion his continued absence, under these circumstances, does not indicate an intention to make that country his permanent residence.
For the purpose of showing that the defendant has abandoned his intention of returning to his family, and that he has made that country-his permanent residence, the plaintiff offered in evi *335 dence before the commissioners, subject to objections by defendant’s counsel, a printed paper proved by the consul general of the republic of Mexico, for the United Stales, to be a number of the official Gazette of Mexico in the Spanish language, dated September 23d, 1844, which the witness received in his official capacity from the department of foreign affairs. In this paper there is an official advertisement, with the name of Benjamin Brundred to it. It is an application for a patent right for an improvement in a spinning machine, in which the applicant describes himself as “ a citizen of the United States in the State of New Jersey, resident and permanently established in the city of Queretaro, in the Mexican republic.” The witness further says that the paper is published and maintained by the government, and is strictly a government gazette.
To this evidence the defendant’s counsel objected before the commissioner and again on the argument before the court. And I think the objection is well taken. The government gazette is admitted as evidence of the public acts of government, or matters of state ; but is no evidence of private titles, or private interests, or to prove a fact of a private nature. Phillip’s Ev. 407, 8; Greenleaf’s Evidence 540, 5 Term Rep. 436, 7 Johnson Rep. 38.
The conclusion to which I have come is, that at the time this writ of attachment was issued, the defendant’s legal residence and domicil were in this state, where his family resided ; that he was in contemplation of law within the reach of the ordinary process of the court, and that the service of a summons upon his family would have been good service.
It is insisted however, by the plaintiff’s counsel that if the attachment was not sued out in bad faith, the fact of non-residence cannot be controverted ; that the affidavit upon which the writ issued is conclusive, and that the defendant’s only remedy is, to give bond under the statute.
The same objection was taken in the case of the City Bank v. Merrit, 1 Green. 131, but overruled, and I think very properly. In that case Ewing, Chief Justice, says, “ the plaintiff or his agent may from wrong information or other causes, very honestly and excusably fall into error concerning the absconding or the residence of the debtor; but the consequences would be *336 pernicious, if the debtor is irrecoverably fixed by it, and his property wrested from him by force of the attachment. It has repeatedly been held that the affidavit is not conclusive.”
In my opinion the affidavit in this case is not conclusive; but the question of the residence of the debtor is open for investigation upon a rule to show cause; and if the court are satisfied from the evidence, that he did not reside out of the state at the time proceedings were instituted, they should be set aside, although the plaintiff may have acted in good faith in making the affidavit. Entertaining this opinion, and believing that the defendant was a resident of this state at the time the writ in this cause was issued, I think the proceedings for this reason should be set aside.
The second reason assigned for setting aside these proceedings is, that another attachment had before been issued into the same county against this defendant.
The attachment first issued was against the defendant as an absconding debtor, and is now upon a rule to show cause why it should not be set aside, as having been improvidently issued. If the pendency of this attachment were the only reason assigned for this motion, I should be inclined to stay proceedings in this cause until the determination of the first suit. There are insuperable difficulties in conducting two cases of attachment against the same defendant in the same county at the same time. These difficulties grow out of the provisions of our attachment act, and will suggest themselves to the mind of the careful practitioner. The opinion of this court in Cummins v. Blair, 3 Harrison R. 152, is decisive upon this point. The court say that “ after one suit is commenced by attachment, it stops every other creditor from proceeding in the same county by attachment until the first suit is discontinued.” I should therefore feel myself bound to set aside these proceedings for the second reason assigned, if the first attachment had been regularly issued by a bona fide creditor in good faith.

Attachment quashed.

Cited in Likens v. Clark, 2 Dutch. 207; Kugler v. Shreeve, 4 Dutch. 130; Hackettstown Bank v. Mitchel, 4 Dutch. 518; Perrine ads. Evans, 6 Vr. 224.